**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE BLUE NOTE, INC., d/b/a The Point,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **THE CITY OF CHICAGO, FLAT IRON BUILDING, LLC, BERGER REALTY GROUP, LLC, ERICA BURGER, RACHEL BREIDINGER, ZVONKO OLEAR, ARTHUR KWAN, BAUM REALTY GROUP, LLC, PATRICK FORKIN, SAVAS ER,** <br><br> **Defendants.** | ) | **Case No. 23-cv-00648** <br><br> **Hon. Thomas M. Durkin** |

**SAVAS ER'S FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS COUNTS V AND VI OF THE FIRST AMENDED COMPLAINT**

The Defendant, Savas Er, by his attorneys, submits the following Motion to Dismiss Counts V and VI of the First Amended Complaint [Dkt. # 24] pursuant to Fed. R. Civ. P. 12(b)(6).

**SUMMARY AND FACTUAL BACKGROUND**

1. The Plaintiff operates a bar and music venue at the Flat Iron Arts Building ("Arts Building") on Milwaukee Avenue, Chicago, Illinois. [Dkt. # 24, ¶ 20, 26].[1] Until October of 2022, the Arts Building was owned by Flat Iron Building, LLC ("FIB"). [Dkt. # 24, ¶ 20]. FIB leased the premises in the Arts Building to the Plaintiff. [Dkt. # 24, ¶ 21, Ex. 1]. The Plaintiff holds a "Late Hour Plan" liquor license ("Late-Hour license"), allowing it to stay open and serve alcohol until 4:00 a.m. on weeknights and 5:00 a.m. on weekends. [Dkt. # 24, ¶ 30, 38].

[1] Unless otherwise stated, the defined terms herein are the same as those identified in the First Amended Complaint [Dkt. # 24].

2. Two shootings occurred at the Plaintiff's bar, the first on October 10, 2021 and the second on February 6, 2022. [Dkt. # 24, ¶ 84, 93, Ex. 37]. On February 8, 2022, the Chicago Police Department ordered the Plaintiff to close their bar. [Dkt. # 24, ¶ 100]. The City also issued an emergency closure order related to various unsafe conditions and code violations on the Plaintiff's premises ("Arts Building Violations"). [Dkt. # 24, Ex. 11]. The Plaintiff and the City litigated the closure orders in multiple forums. [Dkt. # 24 *generally*].

3. In late October of 2022, the Arts Building was sold to NARE Flat Iron, LLC, CCT Flat Iron LLC, Buzzpartners Flat Iron LLC, and DM Flat Iron LLC. [Dkt. # 24, ¶ 182, 309]. The Plaintiff alleges that Savas Er ("Er") "maintains some level of interest" in those entities. [Dkt. # 24, ¶ 182]. On March 13, 2023, the City lifted the emergency closure orders. [Dkt. # 24, ¶ 330].

4. On February 2, 2023, Plaintiff filed a five-count complaint in this matter against Flat Iron Building, LLC, the City of Chicago, the City of Chicago Department of Business Affairs & Consumer Protection, the City of Chicago Department of Buildings, Matthew Beaudet, in his official capacity as the Commissioner of the Department of Buildings, the Chicago Police Department, David O. Brown, in his official capacity as Superintendent of the Chicago Police Department. The original Complaint alleged equal protection violations pursuant to 42 U.S.C. § 1983 ("the Act"); retaliation in violation of the First Amendment pursuant to the Act in violation of Plaintiff's right to free speech; violations of Plaintiff's due process rights pursuant to the Act; violations of Illinois law for abuse of process; and conspiracy to violate the Act. [Dkt. # 1].

5. After the originally named Defendants filed motions to dismiss, the Plaintiff filed its First Amended Compliant on May 12, 2023. [Dkt. # 24]. The First Amended Complaint is brought against the City of Chicago ("City"), FIB, Berger Realty Group, LLC ("BRG"), Erica Berger ("Berger"), Rachel Breidinger ("Breidinger"), Zvonko Olear ("Olear"), Arthur Kwan

("Kwan"), Baum Realty Group, LLC ("Baum Realty"), Patrick Forkin ("Forkin"), and Savas Er ("Er"). *Id.* The First Amended Complaint purports to contain eight counts: (1) equal protection violations pursuant to the Act against the City; (2) violation of the First Amendment pursuant to the Act against the City; (3) violation of due process pursuant to the Act against the City; (4) abuse of process against the City; (5) conspiracy to violate the Act against all the Defendants; (6) fraud against all the Defendants; (7) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") against FIB and BRG; and (8) conspiracy to violate the ICFA against City, Berger, Breidinger, Olear, Kwan, Baum Realty, and Forkin. *Id.*

6. This Motion addresses the two claims brought against Er—Conspiracy to violate the Act (Count V) and fraud (Count VI). The gravamen of the claims against Er are that, "FIB, BRG, Berger, Breidinger, Olear, Kwan, Forkin, and [Er] conspired to 'find a middle ground' to keep Plaintiff closed in order to curry favor with the City regarding the other building violations at the Arts Building (i.e. residential tenants and 'Structural' issues, among others, that affect the entire Arts Building as opposed to just the Property)." [Dkt. # 24, ¶ 120]. The Plaintiff also alleges that Er "directed FIB not to repair the Arts Building Violations and, instead, proceed[ed] with evicting the Plaintiff in furtherance of an agreement with the City." [Dkt. # 24, ¶ 182].

7. For the reasons stated more fully below, the Plaintiff fails to state a claim for conspiracy to violate the Act against Er. The Plaintiff relies on paper thin conclusions that do not come close to plausibly alleging that Er had an agreement with the other Defendants to deprive the Plaintiff of its Late-Hour License or Lease. Furthermore, the Plaintiff fails to plead any facts that could possibly satisfy the heightened pleading standard required to state a claim for fraud against Er. Accordingly, Er respectfully requests that Count V and VI be dismissed with prejudice.

## LEGAL STANDARD

8. A motion under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone, Ill.*, 483 F.3d 454, 457 (7th Cir. 2007). A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

9. In reviewing the sufficiency of a complaint under the plausibility standard promulgated in *Twombly* and *Iqbal,* the Courts must "accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). Even under a notice-pleading standard, some specific facts are required. *Id.* at 616-17.

10. Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The heightened pleading requirements of Rule 9(b) can apply to civil conspiracy claims, in addition to fraud claims, where they "sound in fraud." *Borsellino v. Goldman Sachs Group, Inc.*, 477 F. 502, 507 (7th Cir. 2007) (holding that a civil conspiracy "claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements.").

## ARGUMENT

### I. The Plaintiff Fails to State a Claim for Conspiracy to Violate the Act Against Er (Count V).

11. The Plaintiff fails to allege facts to show that Er engaged in a conspiracy to violate the Plaintiff's rights. To state a claim for civil conspiracy under Illinois law, a plaintiff must allege "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Dvorkin v. Soderquist*, 208 N.E.3d 445, 465 (Ill. App. Ct. 2022). To establish a prima facie case of a civil conspiracy under the Act, "a plaintiff must show (1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights and (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement." *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).

12. To the extent that the Plaintiff's civil conspiracy claim is premised on fraud committed by Er, Count V must be pled in accordance with the heightened pleadings standard of Federal Rule of Civil Procedure 9(b). *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F. 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule 9(b)'s heightened pleading requirements."); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 782-83 (N.D. Ill. 2008) (dismissing civil conspiracy claim where it failed to satisfy the heightened pleading standard in Rule 9(b)).

13. As an initial matter, the plausibility of the Plaintiff's civil conspiracy claim is dependent on the plausibility of the Plaintiff's claims under the Act against the City in Counts I through IV. *See Sow v. Fortville Police Dept.*, 636 F.3d 293, 305 (7th Cir. 2011) ("The district court also correctly determined that the absence of any underlying violation of Plaintiff's rights

precludes the possibility of Plaintiff succeeding on a conspiracy claim."). Therefore, Er incorporates and adopts the arguments raised in the City's Motion to Dismiss the First Amended Complaint. [Dkt. # 37]. If the underlying claims for violation of the Act are dismissed, the corresponding conspiracy claim must also be dismissed because there was no overt tortious or unlawful act. *Sow*, 636 F.3d at 305; *Dvorkin*, 208 N.E.3d at 465.

14. In Count V, the Plaintiff alleges that "all Defendants coordinated with each other through concerted action to further their plan to deprive Plaintiff of its Late-Hour License or the Lease." [Dkt. # 24, ¶ 378]. The Plaintiff, however, fails to show how *Er* participated in any unlawful scheme with the other Defendants or how he acted with an unlawful purpose or a lawful purpose by unlawful means, as required by *Dvorkin*.[2]

15. The Plaintiff alleges that Er (in addition to the other Defendants) caused the Arts Building Violations to remain outstanding to prevent the Plaintiff from re-opening. [Dkt. # 24, ¶ 200, 220]. But the Plaintiff's explanation for Er's alleged statement—his purported "interest in maintaining leniency with the City with respect to the City not enforcing the Arts Building Violations against the other tenants of the Arts Building since Savas was in discussions to purchase the Arts Building"—is puzzling for several reasons. [Dkt. # 24, ¶ 201].

16. First, the entities allegedly controlled by Er did not purchase the Arts Building until October 28, 2022. Er could not have had any control over what repairs FIB made to the Arts Building or when they made them. In fact, under the Plaintiff's own allegations, the Buyers hired

[2] As it relates to federal pleading standards more generally, a plaintiff cannot simply raise a blanket allegation that attempts to impute wrongdoing to a group of defendants without delineating individual actions. *See Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful."). "A complaint based on a theory of collective responsibility must be dismissed." *Id.* "That is true even for allegations of conspiracy." *Id.* "Although every conspirator is responsible for others' acts within the scope of the agreement, it remains essential to show that a particular defendant joined in the conspiracy and knew of its scope." *Id.* Lumping Er in with other Defendants in the First Amended Complaint without specific allegations showing Er's knowledge and assent to the plan dooms the Plaintiff's conspiracy claim.

a contractor to correct fire code violations at the Arts Building in January of 2023—not long after their purchase of the Arts Building. [Dkt. # 24, ¶ 322-323]. Why would Er hire a contractor to remedy one of the "big issue" Arts Building Violations right after the Buyers' purchase if he was trying to use the Arts Building Violations as a pretext to keep the Plaintiff from operating?

17. Second, the Plaintiff fails to allege that Er was aware of any other Arts Building Violations against other tenants or why Er would want to maintain "leniency" from the City on these issues. Prior to October 28, 2022, FIB was the only party in position to make any repairs to the Arts Building. Enforcement of the Arts Building Violations was in the City's exclusive control. After all, the Plaintiff makes clear that it was "[t]he *City's plan* to eliminate Late-Hour Licenses without compensation," and that plan dated back to "at least January of 2020," years before the Buyers purchased the Arts Building. [Dkt. # 24, ¶ 58-59 (emphasis added)].

18. The First Amended Complaint is devoid of facts showing that Er "knowingly and voluntarily participated in the common scheme at the heart of the alleged civil conspiracy." *Redelmann v. Claire Sprayway, Inc.*, 874 N.E.2d 230, 241 (Ill. App. Ct. 2007). More troubling, the Plaintiff failed to specifically plead the shared agreement among the Defendants. *See Borsellino v. Goldman Sachs Group, Inc.*, 477 F. 502, 509 (7th Cir. 2007) ("'The agreement is a necessary and important element of [a claim for civil conspiracy].'" (*quoting McClure v. Owens Corning Fiberglass Corp.*, 720 N.E.2d 242, 258 (Ill. 1999))).

19. The Plaintiff's allegation that Er attempted to get Plaintiff to switch to a 2:00 a.m. bar in furtherance of his (and the previous owner's) agreement with the City to modify Plaintiff's Late-Hour License is baseless. [Dkt. # 24, ¶ 321]. The Plaintiff fails to plead any facts to show that Er had any communications with the City or that he any agreement with them.

20. Moreover, the fact that the Buyers served the Plaintiff with a Notice of Termination of Tenancy pursuant to Section 23(k) of the Lease is irrelevant. Section 23(k) of the Lease states that: "Landlord shall have the right to terminate this Lease without compensation to tenant upon ninety days prior notice to Tenant." [Dkt. # 24, Ex. 1]. On its face, Section 23(k) gives the landlord—after October 28, 2022, the Buyers—the unfettered right to terminate the Lease without compensation upon ninety days prior notice. The Buyers had the absolute right to terminate the Lease under Section 23(k). *See Borsellino*, 477 F.3d at 509 ("'A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy.'" (*quoting Adcock v. Brakegate*, 645 N.E.2d 888, 894 (Ill. 1994))). There are no facts in the First Amended Complaint to show that the Er directed this action in concert with the City or any other Defendant.

21. There are simply no allegations to show that Er conspired with the other Defendants to deprive the Plaintiff of its civil rights under the Act. The Plaintiff's pleading fails under Rule 12(b)(6) standards and the more exacting standards of Rule 9(b). Without facts to satisfy the threshold elements for a conspiracy claim, Count V must be dismissed with prejudice.

## II. The Plaintiff Fail to State a Claim for Fraud Against Er (Count VI).

22. The Plaintiff regurgitates its claim for conspiracy to violate the Act in Count V in its claim for fraud in Count VI. [*Compare* Dkt. # 24, ¶ 375-379 *with* ¶ 380-384]. The Plaintiff flatly fails to plead any facts to support a claim for fraud against Er, especially under the heightened pleading standard for fraud claims.

23. Under Illinois law, the elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and

(5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996). In both Illinois state courts and federal courts, fraud must be pled with specificity and particularity. *Id.* at 496-97 ("A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made."); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) ("In adding flesh to the bones of the word particularity, we have often incanted that a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud").

24. Crucially, the Plaintiff fails to identify with particularity what misrepresentations Er to the Plaintiff. To the extent that the Plaintiff's claim is premised on Lin's conversation with Er on November 4, 2022, the Plaintiff fails to show: (1) what Er represented that was false; (2) how Er intended to induce the Plaintiff to act; (3) how the Plaintiff relied on Er's statement; and (4) how the Plaintiff was damaged.

25. Civil conspiracy and fraud have distinct elements that must be particularly and specifically pled. The Plaintiff cannot merely repackage its civil conspiracy claim as a claim for fraud. Without any specific facts to show how each of the elements of fraud are satisfied, Count VI must be dismissed with prejudice.

**CONCLUSION**

WHEREFORE, the Defendant, Savas Er, respectfully requests that this Court enter an order dismissing Counts V and VI the First Amended Complaint [Dkt. # 24] pursuant to Fed. R. Civ. P. 12(b)(6) and granting any further relief this Court deems fair.

**SAVAS ER,**

By: /s/ Thomas J.K. Schick________
One of its attorneys

Marty J. Schwartz (#3124462)
Thomas J.K. Schick (#6330400)
Schain, Banks, Kenny & Schwartz, Ltd.
70 West Madison Street
Suite 5400
Chicago, IL 60602
(312) 345-5700
mschwartz@schainbanks.com
tschick@schainbanks.com

**CERTIFICATE OF SERVICE**

I, Thomas J.K. Schick, an attorney, certify that on July 17, 2023, I filed a true and correct copy of the foregoing and served the below-named attorneys through the ECF system:

To: Daniel T. Fahner
Alex Calhoun Kosyla
RKF Global PLLC
555 Skokie Blvd.
Suite 450
60062
Northbrook, IL 60062
(202) 680-0971
Email: daniel.fahner@rkfglobal.com
Email: alex.kosyla@rkfglobal.com

Bradley Gordon Wilson
Aaron Talen Dozeman
City of Chicago Law Department
Constitutional and Commercial Litigation Division
2 N. LaSalle Street
Suite 520
Chicago, IL 60602
312-744-7686
Email: bradley.wilson@cityofchicago.org
Email: aaron.dozeman1@cityofchicago.org

Christopher Randall Johnson
Cary G. Schiff & Associates
134 N. Lasalle St.
Suite 1740
Chicago, IL 60602
(312) 419-1130
Email: cgschifflaw@gmail.com

Paige Moray Neel
Clausen Miller P.C.
10 S. LaSalle Street
Suite 1600
Chicago, IL 60603
(312) 855-1010
Email: pneel@clausen.com

/s/ Thomas J.K. Schick