IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE BLUE NOTE, INC. d/b/a The Point, an Illinois corporation, Plaintiff, | ) | |
| v. | ) | |
| THE CITY OF CHICAGO, a Municipal Corporation, FLAT IRON BUILDING, LLC, an Illinois limited liability Company; BERGER REALTY GROUP, LLC, an Illinois limited liability company; ERICA BERGER, an individual; RACHEL BREIDINGER, an individual; ZVONKO OLEAR, an individual; ARTHUR KWAN, an individual; BAUM REALTY GROUP, LLC, an Illinois limited liability company; PATRICK FORKIN, an individual; SAVAS ER, an individual. | ) | Case: 1:23-cv-00648 |
| Defendants. | ) | |

**BERGER REALTY GROUP, LLC, ERICA BERGER, RACHEL BREIDINGER, ZVONKO OLEAR, AND ARTHUR KWAN'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12 (B)(6)**

NOW COMES Berger Realty Group, LLC, Erica Berger, Rachel Breidinger, Zvonko Olear, and Arthur Kwan (collectively referred to herein as "BRG") by and through their attorneys, PAIGE M. NEEL, MAX G. WESSELS and CLAUSEN MILLER P.C. and for their Memorandum of Law in Support of their Motion to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

## I. INTRODUCTION AND BACKGROUND

The Blue Note, Inc.'s (d/b/a "the Point") Amended Complaint ("Complaint") should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to allege facts sufficient to state a claim upon which relief could be granted for its claims of Conspiracy to

Violate 42 U.S.C § 1983 (Count V), Fraud (Count VI), Violation of the Illinois Consumer Fraud and Deceptive Business Practice Act ("ICFA") (Count VII) and Conspiracy to Violate the ICFA (Count VIII). (Dkt. # 24, pp. 64-67).

Plaintiff operated a bar and music venue, the Point, located at the Flat Iron Arts Building under a lease agreement with Flat Iron Building, LLC ("FIB"). *Id.*,¶ 5, 21. BRG was the agent for FIB. *Id.*, ¶ 7. Plaintiff previously purchased a "Late Hour License" which allowed the Point to remain open and serve alcohol until 4:00 a.m. on weeknights and 5:00 a.m. on weekends. *Id.*, ¶ ¶30, 35, 38.

Two shootings occurred at the Point on October 10, 2021, at 3:42 a.m. and on February 6, 2022, at 5:06 a.m. *Id.*, ¶¶84, 93, 270, Exs. 35, 44. The Point was also cited for having "numerous patrons inside the bar after the bar closed at 0500hrs." *Id.*, ¶ 97, Ex. 7. On February 8, 2022, the Chicago Police Department Superintendent ("CPD") closed the Point under section 4-4-285 of Chicago's Municipal Code, entitled "Public safety threat- Summary Closure" (the "Summary Closure Order"). *Id.*, ¶¶ 100-01, Ex. 8. The Investigation Summary for the Summary Closure Order found that between August 2021 and February 2022, there had been fifty reported incidents at the Point, eleven of which were of a violent nature and revealed one "Public Place of Amusement" license violation and three liquor license violations in November 2021. *Id.*, Ex. 35, pp. 6, 15, 66. The closure of the Point and the was at the sole discretion of CPD. *Id.*, ¶¶ 67-68.

To re-open, Plaintiff was required to enter into a Nuisance Abatement Plan with the City of Chicago (the "City") and the decision to extend the closure or to accept a Nuisance Abatement Plan was at the sole discretion of CPD and the City. *Id.*, ¶¶ 67, 243, 245-261. Plaintiff and the Department of Business Affairs and Consumer Protection ("BACP") began negotiating a Nuisance Abatement Plan to address the public safety threats. *Id.*, ¶¶ 70, 82, 148, 242. Plaintiff

did not agree to a Nuisance Abatement Plan and instead engaged in a "Probable Cause Hearing" and on July 8, 2022, appealed the Summary Closure ruling, which is currently pending. *Id.*, ¶¶ 241-261, 274-76.

Following the Summary Closure Order, Plaintiff met with representatives from the City, CPD and BACP and conducted a walkthrough of the Point to review Plaintiff's proposed security plan. *Id.*, ¶¶ 236, 236. On February 18, 2022, the Department of Buildings ("DOB") then issued an Emergency Closure Order for the Point located at 1565 N. Milwaukee, based on findings that the Point was a "public nuisance that is dangerous, hazardous and endangers the public health…" *Id.*, Ex. 14. The Emergency Closure Order listed numerous violations specific to and the responsibility of the Point, including violations of exit signs, ice/ soda machines, coolers, emergency exits, exposed live electrical wires, the overuse of extension cords and unsanitary conditions and found other code violations in the Arts Building. *Id.*, ¶130, Exs. 11, 14. The Emergency Closure Order did not apply to other tenants located in the Art Building. *Id.*, Ex. 11.

On March 8, 2022, Plaintiff was authorized to obtain the necessary work permits to correct the violations at the Point. *Id.*, ¶ 157. On April 15, 2022, Plaintiff was informed that work permits were obtained for the Arts Building and that work would commence in the next week. *Id.*, ¶ 179. On March 13, 2023, the Emergency Closure Order was lifted as the dangerous conditions and violations were remedied. *Id.*, ¶330. FIB sold the Arts Building on October 31, 2022, and on November 8, 2022, the "Buyers" served a "Notice of Termination of Tenancy" on the Point pursuant to Section 23(K) of the lease which allowed the Landlord to terminate the Lease without compensation to tenant upon ninety days prior notice to Tenant. *Id.*, ¶ 320, Ex. 1.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, claims must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the claim is and the grounds upon which it rests." *United States ex rel. Conner v. Veluchamy*, No. 11-cv-4458, 2014 U.S. Dist. LEXIS 946 (N.D. Ill. Jan. 3, 2014), *see also* Fed. R. Civ. P. 8(a)(2). The factual allegations must be sufficient to raise the possibility of relief above the "speculative level," assuming all allegations in the complaint are true. *Id.* at 6. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* A complaint must allege more than a sheer possibility that a defendant acted unlawfully. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 612 (7th Cir. 2013). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

A party may plead itself out of court by pleading facts that establish an impenetrable defense to its claims. *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 547 (N.D. Ill. 2011). "Specifically, a party pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." *Id.*

## III. ARGUMENT

### A. Plaintiff fails to state a claim against BRG for Conspiracy to Violate 42 U.S.C § 1983

Plaintiff's Conspiracy to Violate 42 U.S.C § 1983 claim is premised on the allegation that BRG acted in concert with the other Defendants to deprive Plaintiff of its Late Hour License or its Lease. (Dkt. # 24, ¶¶376-78). Pursuant to Fed. R. Civ. P. 12(b)(6), this Court should find that Plaintiff's Complaint fails to state a claim of conspiracy against BRG.

In order to establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights and those individuals were willful participants in joint activity with the State or its agents. *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998). A civil conspiracy "is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Scherer v. Balkema*, 840 F.2d at 441 (7th Cir. 1988). A requirement of the joint action charge is that both public and private actors share a common, unconstitutional goal. *Id*. Plaintiff must prove that each of the joint actors were motivated by this unconstitutional purpose. *Id*. at 108. Bare allegations of joint action or a conspiracy are insufficient, sufficient facts must be alleged to make the claim of joint action or conspiracy plausible. *Separation of Hinduism from Our Schs v. Chicago Public Schs*, No. 20 C 4540, 2021 U.S. Dist. LEXIS 154688, at *13 (N.D. Ill. Aug. 17, 2021).

"[C]onspiracy is not an independent basis of liability in § 1983 actions." *Dyson v. City of Calumet City*, 2019 U.S. Dist. LEXIS 140690, at *23 (N.D. Ill. Aug. 20, 2019). There can be no claim for conspiracy in the absence of an underlying constitutional violation. *Id*.

**1. Plaintiff's conspiracy claim fails as there were no underlying constitutional violations**

Plaintiff's conspiracy claim is dependent on claims that its constitutional rights were violated through the City's "three-fold" plan to deprive Plaintiff of its Late-Hour License. (Dkt. # 24, ¶¶334-69). Plaintiff claims this plan began in "at least January of 2020," and involved CPD entering a Summary Closure Order, the DOB finding as many violations as possible, and the

BACP prosecuting the Late Hour License, keeping the Point closed until it modified its hours. *Id.*, ¶ ¶ 58-59.

As established in The City of Chicago's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint, Plaintiff cannot establish that it suffered a deprivation of its constitutional rights in violation of 42 U.S.C § 1983. (*See* Dkt. # 37, pp. 13-23). BRG joins and adopts the arguments set forth in The City of Chicago's Memorandum of Law in Support of its Motion to Dismiss the Complaint as to Count V. Thus, Plaintiff's Conspiracy to violate § 1983 fails against BRG. *See Dyson*, 2019 U.S. Dist. LEXIS 140690, at *23, dismissing plaintiff's conspiracy claim as there was no underlying constitutional violation.

**2. Plaintiff cannot show a concerted effort to deprive Plaintiff of its constitutional rights**

Plaintiff does not plead sufficient facts to support its claim that BRG acted with the City to commit a constitutional tort. Plaintiff alleges that the "three-fold" plan began in "at least January of 2020," yet, Plaintiff alleges that BRG began to conspire with Co-Defendants "on or after February 28, 2022" which is after the Point was closed under the Summary Closure Order and after the Emergency Closure Order was entered. (Dkt. # 24, ¶ ¶ 58-59, 100, 120, Exs. 8, 14).

Plaintiff cannot plead a factual basis to claim that BRG conspired to deprive Plaintiff of its Late Hour License or to keep the Point closed as those actions: 1) did not involve BRG as these decisions were made by departments exclusively under control of the City and 2) were made well before the alleged conspiracy is claimed to have begun. *Id.* at ¶¶ 58-59, 120. "Bare allegations of joint action or a conspiracy are insufficient…[t]he plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is fairly attributable to the state." *Separation of Hinduism,* 2021 U.S. Dist. LEXIS 154688, at *13. Plaintiff cannot show the required concerted effort between

BRG and the City and cannot show that BRG and the City reached an understanding to deprive Plaintiff of its constitutional rights. *See Hanania v. Loren-Maltese*, 212 F.3d 353, 356 (7th Cir. 2000).

Furthermore, Plaintiff's claim that a conspiracy existed between BRG and the City to combine other building violations to keep the Point closed and conspired to not complete those violations in order to terminate Plaintiff's Lease or to curry favor with the City, is equally unavailing and does not support its claim of conspiracy. Plaintiff's purported reliance on communications to the City to discuss violations and a subsequent communication from the City informing BRG that is architect will provide information related to the permits does not demonstrate that there was an understanding to deprive the plaintiff of its constitutional rights. (Dkt. # 24, ¶¶ 121-122, Exs. 13-14). This theory is also disproven by the fact Defendants remedied the violations to the Arts Building which passed inspection. *Id.*, ¶ 330.

Likewise, internal emails and representations to Plaintiff concerning BRG's opinion that the Point was a nuisance and should comply with some of the proposed requirements in the Nuisance Abatement Plan (especially considering the violence, more than fifty reported incidents and license violations attributed to the Point) do not constitute an agreement to deprive a constitutional right. *Id.*, ¶¶ 168, 169, Ex. 26. Finally, Plaintiff's claim that a conspiracy existed to not fix other Art's Building violations to keep the Point closed is defeated by the fact that at all times relevant, the Point remained closed under the Summary Closure Order as it refused to enter into a Nuisance Abatement Plan (the acceptance of which was at the sole discretion of the City) which was required to re-open. *Id.*, ¶¶ 67, 241-261, 274-76, Ex. 42.

The Complaint is devoid of facts sufficient to demonstrate that any agreement to conspire took place between BRG and the City or to raise the inference of a mutual understanding or

assent by BRG. This Count V should be dismissed. Phillips v. Merriweather, 92 C 8488, 1993 U.S. Dist. LEXIS 5960, at *8 (N.D. Ill. May 4, 1993) dismissing Plaintiff's complaint as no facts demonstrating that any agreement to conspire took place between the defendants. Phillips v. Merriweather, 92 C 8488, 1993 U.S. Dist. LEXIS 5960, at *8 (N.D. Ill. May 4, 1993).

**B. Plaintiff fails to State a Claim for Fraud**

Plaintiff's Fraud claim is premised on allegations that "Defendants acted in concert for the purpose of depriving Plaintiff of its Late Hour License." *Id.*, ¶ 381. Common law fraud demands a "higher standard" when it comes to pleading. *Board of Education v. A, C & S, Inc.*, 131 Ill. 2d 428, 457, 546 N.E.2d 580 (1989). "The elements that must be alleged include: (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury." *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 529, 675 N.E.2d 897, 905 (1996). Failure to prove justifiable reliance is fatal to claims of fraudulent misrepresentation. *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847, 920 N.E.2d 1161, 1166-67 (1st Dist. 2009). "The facts which constitute an alleged fraud must be pleaded with specificity and particularity, including 'what misrepresentations were made, when they were made, who made the representations and to whom they were made'" and the same heighted pleading standard is required in federal court. *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309, 773 N.E.2d 84, 265 Ill. Dec. 722 (2002), *Ritacca v. Storz Medical, A.G.*, No. 12 C 8550, 2013 U.S. Dist. LEXIS 145100, at *7 (N.D. Ill. Oct. 4, 2013).

Here, the Complaint does not identify and is devoid of any false statements made by BRG, known to be false that Plaintiff had a right to rely on, or did rely on, that induced Plaintiff to act, nor does Plaintiff allege how any relied upon statement caused injury. The Complaint is devoid of any such statements, let alone statements pleaded with particularity, needed to support the claim that BRG fraudulently deprived Plaintiff of its Late Hour License.

Furthermore, Plaintiff's exhibits do not support its claim of Fraud relating to its Late Hour License. Expressions of BRG's opinion that the Point is a nuisance or that the City wants the Point to no longer operate as a 5:00 a.m. venue do not fulfil the above cited pleading standards as "a statement which is merely an expression of opinion, or which relates to future or contingent events, expectations or probabilities, rather than to pre-existent or present facts, ordinarily does not constitute an actionable misrepresentation under Illinois law." *Dyson*, 2019 U.S. Dist. LEXIS 114960, at *10.

To the extent Plaintiff's fraud claim is premised upon rent obligations, it similarly fails. The Complaint is devoid of any false statement concerning rent obligations but does contains allegations that defeat any claim of fraud. Plaintiff pleads that rent was abated while the Point was shut down and that Plaintiff was told rent was never fully abated. (Dkt. # 24, ¶ ¶ 107, 193). Allegations that fraud is based on not serving a five-day notice does not meet the elements of fraud as the same is defeated by Plaintiff's allegation that it paid the back rent, that BRG never terminated its lease and by the fact that Plaintiff was not terminated for a failure to pay rent. *Id.*, ¶ ¶ 217-18, 320-21. Similarly, allegations concerning the exploration of lease options for the Point do not constitute fraud as no false statement of fact was made to Plaintiff and there was no reliance. Therefore, Plaintiff could not have been induced to act on the statement and could not have suffered injuries due to said reliance. *See People ex rel. Peters v. Murphy-Knight*, affirming

dismissal of plaintiff's fraud claim based upon plaintiff's failure to allege the required element of reliance. 248 Ill. App. 3d 382, 391, 618 N.E.2d 459, 465 (1st Dist. 1993).

Plaintiff's claim that Fraud is based on repairs to the Arts Building also fails. Plaintiff cannot and does not identify any false statements concerning these repairs and the Complaint and its exhibits establish that Plaintiff was permitted to begin working on the Point's violations, was updated as to the status of the repairs and that the work to correct violations was done and approved. *Id.*, ¶¶ 146, 157, 166, 179, 330. Plaintiff's theory that "upon information and belief" the DOB did not rely on certain permits in finding the violations abated, does not support a claim for fraud but disproves Plaintiff's claim that BRG made false statements concerning the status of the repairs. *Id.*, ¶ 333.

**C. Plaintiff fails to State a Claim for Violation of the ICFA**

The elements of a claim under the ICFA are: (1) a deceptive act or practice by the defendant; (2) the defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception during a course of conduct involving trade or commerce. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416-17, 775 N.E.2d 951, 960 (2002). The ICFA is not intended to transform nondeceptive and nonfraudulent statements or omissions into actionable ones. *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 46, 563 N.E.2d 1031, 1036 (1st Dist. 1990). For the reasons set forth below, Count VII should be dismissed because Plaintiff fails to state a claim under the ICFA.

**1. Plaintiff fails to state a claim of an "unfair practice" or a "deceptive practice" under the ICFA**

"Deceptive or unfair practice" is defined as the use or employment of any deception, fraud, false pretense, misrepresentation or the concealment, suppression or omission of any material fact, with intent that other rely on the falsified material fact. 815 ILCS 505/2 (West

2006). Deceptive practices claim must meet Rule 9(b)'s heightened pleading standards. *Whittler v. Midland Funding, LLC*, No. 14 C 9423, 2015 U.S. Dist. LEXIS 68096, at *5 (N.D. Ill. May 27, 2015). Under Rule 9(b), "the plaintiff must plead with particularity the circumstances constituting fraud…specifically, the complaint must identify the who, what, when, where, and how of the alleged fraud." *Guajardo v. Skechers USA, Inc.*, No. 4:19-cv-04104-SLD-JEH, 2021 U.S. Dist. LEXIS 179774, at *5 (C.D. Ill. Sep. 21, 2021). To be unfair under the ICFA, a defendant's conduct must: "(1) violate public policy; be so oppressive that the consumer has little choice but to submit; and (2) cause consumers substantial injury." *Maxwell v. Sanofi-Aventis United States LLC*, No. 15-cv-10095, 2016 U.S. Dist. LEXIS 87913, at *7 (N.D. Ill. July 6, 2016). Plaintiff must describe how the unfair practice is oppressive or violates public policy and without such a description, the complaint fails to state a cause of action. *Boone v. MB Financial Bank, N.A.*, 375 F. Supp. 3d 987, 996 (N.D. Ill. 2019).

In a purported attempt to state a claim under ICFA, Plaintiff claims that BRG "acted in concert" and conspired to deprive Plaintiff of its Late Hour License or Lease and used "unfair and/or deceptive acts" to gain leniency with the City so that violations would not be enforced against other tenants. (Dkt. # 24, ¶ 385-91). Plaintiff's claim fails as none of the allegations contained in Plaintiff's 393 paragraph Complaint contain any factual support to claim BRG engaged in a deceptive or unfair practice.

First, Plaintiff cannot and does not identify any concealed, fraudulent or misrepresented statements made by BRG to support its hypothesis that BRG made a deal with the City so that other violations would not be enforced. Contrary to Plaintiff's claim that "the Entire Premises (i.e. the Arts Building) was ordered closed," no other tenants were subject to the Emergency Closure Order. *Id.*, ¶¶129, 133, 135, Ex. 11, 14. "When an exhibit incontrovertibly contradicts

the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). Thus, any claim that BRG used unfair or deceptive acts to keep the Point closed in favor of other tenants remaining open is defeated.

The Amended Complaint is devoid of any factual support for its claim that FIB and BRG made the conscious decision not to complete violation work, "while at the same time representing to Plaintiff that they were" or made any other deceitful or untrue statement concerning the status of the repairs. *Id.*, ¶ 191. Plaintiff does not and cannot provide any factual support concerning these alleged misrepresentations, such as the who, what, when, where, and how of the alleged fraud. Thus, Plaintiffs ICFA count should be dismissed. *See Guajardo*, 2021 U.S. Dist. LEXIS 179774, at *12, dismissing Plaintiff's ICFA claim with prejudice because plaintiff failed to plead a specific statement or omission that deceived her. Plaintiff's own allegations state that BRG informed Plaintiff that some work may not be completed by the requested date. (Dkt. # 24, ¶ 193, Ex. 26).

Plaintiff was made aware of the current state of the repairs and cannot identify any deceptive or untrue statements, nor does Plaintiff allege how he relied on any statement. *See Dloogatch*, dismissing plaintiffs' complaint as they did not plead reliance with sufficient specificity and particularity. 396 Ill. App. 3d at 850. Finally, Plaintiff's claim that BRG used unfair and/or deceptive acts so that violations would not be enforced is defeated by the fact that the repairs were and that the same passed inspection. *Id.*, ¶ 330, Exs. 30, 31.

Likewise, Plaintiff fails to provide any factual support for its claim that BRG somehow employed deceptive or unfair acts to deprive Plaintiff of its lease or Late Hour License. The CPD closed the Point as it was determined to be a public safety threat and the DOB closed the Point

prior to Plaintiff's allegations of some deal not to not enforce other violations. *Id*., ¶ ¶ 100-01, 120, 124-25, Exs. 8, 11, 14. Plaintiff does not and cannot allege that BRG had any involvement in these decisions, let alone violated the ICFA. Furthermore, Plaintiff cannot allege that BRG caused an injury as Plaintiff refused a Nuisance Abatement Plan and instead chose to engage in a "Probable Cause Hearing" and an appeal of the same. *Id*., ¶¶ 241-261, 274-76. Damages may not be presumed under the ICFA. *Tolve v. Ogden Chrysler Plymouth*, 324 Ill. App. 3d 485, 258 Ill. Dec. 153, 755 N.E.2d 536, (Ill. App. Ct. 2d Dist. 2001), *see Whittler*, 2015 U.S. Dist. LEXIS 68096, at *8-9, dismissing Plaintiff ICFA claim because Plaintiff suffered no actual damages or that the conduct at issue proximately caused his damages.

Plaintiff's purported reliance on BRG's opinion that the Point was a safety concern do not constitute an unfair or deceptive practice. Furthermore, BRG's statements to Plaintiff that the City would not let him re-open or consider being a 2:00 a.m. bar, are not deceptive or fraudulent as they were true per Plaintiff's own allegations that a Nuisance Abatement Plan would require the Point to close at 2:00 a.m. The few cases which have found a true statement to be actionable under ICFA typically involve a facially obvious omission or deception as to a material fact. *Oettle v. Walmart, Inc.*, No. 3:20-cv-455-DWD, 2022 U.S. Dist. LEXIS 150464, at *13-14 (S.D. Ill. Aug. 22, 2022). Here, Plaintiff does not and cannot any omissions or deception as to any material fact and this failure warrants dismissal. *See O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) dismissing an ICFA claim based on a material omission theory because the plaintiff failed to "identify any particular direct statements from Defendant that contain[ed] material omissions."

Plaintiff's claim that BRG used deceptive or unfair practices to terminate its lease is equally without merit. First, BRG did not terminate Plaintiff's lease. (Dkt. # 24, ¶¶ 320-21).

Second, the Complaint is devoid of any deceptive or unfair practices employed by BRG to terminate the lease and establishes that BRG worked with Plaintiff and allowed for rent abatement while the Point was closed. *Id.*, ¶165. Plaintiff's non-sensical theory that instead of the rent abatement agreement, **which Plaintiff agreed to**, BRG should have served a five-day notice for non-payment of rent does not constitute a violation of the ICFA. *Id.*, ¶176. Plaintiff's own allegations disprove its claim under the ICFA and establish that it agreed to a rent abatement period, was aware that rent would be due and was provided with ample notice of when rent would be due. *Id.*, ¶217.

Plaintiff's attempt to support a claim under the ICFA by citing communications regarding lease termination options also fails as the same devoid of any allegations that BRG concealed, lied or misrepresented Plaintiff's rent obligations. Considering the safety concerns and citations associated with the Point, BRG's opinions and internal and external communications on these issues were not deceitful or false and Plaintiff does not identify any relied upon statements. BRG even informed Plaintiff that it was concerned about the violence, safety issues, negative media attention and reputational damage the Point was causing. *Id.*, Ex. 26. None of these statements meet the pleading standard for a deceptive or untrue practice. *Id.*

**D. Plaintiff fails to state a claim for Conspiracy to Violate the ICFA**

Similar to the other causes of action, Plaintiff's claim for conspiracy to violate the ICFA alleges that BRG, the City, Baum Realty and Forkin "acted in concert" and conspired to deprive Plaintiff of its Late-Hour License or Lease. *Id.*, ¶ 389-393. For the reasons set forth above and herein, Count VIII should also be dismissed.

In order to state a cause of action for conspiracy, plaintiff must allege: 1) an agreement, 2) by two or more persons, 3) to perform an overt act or acts, 4) in furtherance of the

agreement/conspiracy, 5) to accomplish an unlawful purpose or a lawful purpose by unlawful means, and 6) causing injury to another. *Nichols Motorcycle Supply v. Dunlop Tire Corp.*, No. 93-C-5578, 1994 U.S. Dist. LEXIS 17761, at *1 (N.D. Ill. Dec. 9, 1994). Where a plaintiff's claim is of fraud under the ICFA, as it is here, the sufficiency of the complaint is analyzed under the heightened pleading standard set forth in Fed. R. Civ. P. 9(b). *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).

The viability of a conspiracy claim depends on whether the allegations support an underlying cause of action, and a conspiracy claim cannot stand alone without any independent underlying tortious or unlawful conduct. *Nichols Motorcycle Supply*, 1994 U.S. Dist. LEXIS 17761, at *1, 4-5. As established above, the Complaint comes nowhere near alleging a violation of the ICFA, thus Plaintiff's conspiracy claim fails and should be dismissed. *See Id.*, dismissing plaintiff's civil conspiracy claim because he failed to sufficiently plead the purported co-conspirators together committed an underlying act.

Furthermore, Plaintiff does not and cannot set forth any factual allegations to support a claim that an agreement was reached to violate the ICFA. Thus, Count VIII should be dismissed.

## IV. <u>CONCLUSION</u>

For the reasons stated above, Berger Realty Group, LLC, Erica Berger, Rachel Breidinger, Zvonko Olear, and Arthur Kwan, respectfully requests that this Honorable Court grant the instant Motion and enter an Order dismissing Plaintiff's Amended Complaint, with prejudice and for any other relief that this Court deems just and equitable.

Respectfully submitted,

*<u>/s/ Paige M. Neel</u>*

PAIGE M. NEEL – 6279324
pneel@clausen.com
MAX G. WESSELS – 6324836

mwessels@clausen.com
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for: Defendants, Berger Realty Group, LLC, Erica Berger, Rachel Breidinger, Zvonko Olear, and Arthur Kwan

**CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING**

The undersigned hereby certifies that a true and correct copy of Defendants' Motion for to Dismiss Plaintiff's Amended Complaint and a Memorandum in Support of the same were electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record on August 14, 2023.

*/s/ Thomas McCabe*