**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE BLUE NOTE, INC., d/b/a The Point,<br><br>Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO,<br>FLAT IRON BUILDING, LLC,<br>BERGER REALTY GROUP, LLC,<br>ERICA BERGER,<br>RACHEL BREIDINGER,<br>ZVONKO OLEAR,<br>ARTHUR KWAN,<br>BAUM REALTY GROUP, LLC,<br>PATRICK FORKIN,<br>SAVAS ER,<br><br>Defendants. | ) | Case No. 23-cv-00648<br><br>Hon. Thomas M. Durkin |

---

**DEFENDANT BAUM REALTY GROUP, LLC's**
**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**UNDER RULE 12(b)(1) AND RULE 12(b)(6)**

---

Craig Penrose
Laurie & Brennan, LLP
Two North Riverside Plaza
Suite 1750
Chicago, IL 60606
Phone: 312-445-8780
cpenrose@lauriebrennan.com

*Attorneys for Baum Realty Group, LLC*

**TABLE OF CONTENTS**


**I. INTRODUCTION**……………………………………………………………...……..1

**II. SUMMARY OF FIRST AMENDED COMPLAINT**...................................................1

**III. THE MOTION TO DISMISS STANDARD UNDER 12(b)(1) AND 12 (b)(6)**………………………………………………………….5

**IV. ARGUMENT**…………………………………………………………………….…….6

**A. There is No Jurisdiction As to Baum— Supplemental or Otherwise**……………………………………………...…….6

**B. If There Is No § 1983 Liability—There Can Be No Liability under Conspiracy To Violate § 1983 Under Count V**…………………………..8

**1. The *Younger* Doctrine Requires Dismissal Under 12(b)(1)**…………….8

**2. *Rooker Feldman* Will Further Require Dismissal under 12(b)(1) Even After the Final Revocation Issue In State Court**…………………………………...…..9

**3. The City Of Chicago Has No *Monell* Liability To Support § 1983 Liability**……………………………………..……..9

**4 Even Ignoring the Above, There is No Properly Pleaded Conspiracy**……………………………..11

**C. Fraud Is Not Properly Pleaded Under Count VI**…………………………....12

**D. Conspiracy to Violate The ICFA Under Count VIII Must Be Dismissed**…………………………………………12

**1 There Can Be No Conspiracy Claim Under Illinois Law To Violate A Statute**……………………………….13

**2. The Underlying ICFA Claim Itself Is Deficient**………………………..14

**3. The Fraud Pleading Standard Is Not Met For the Underlying ICFA Claim**……………………………………….14

**V. CONCLUSION**……………………………………………………………………15

# TABLE OF CONTENTS

**Federal Cases**

*Abrams v. Carrier Corp.*,
434 F.2d 1234 (2d Cir.1970)……………………………………………………………6

*Apex Digital, Inc. v. Sears, Roebuck & Co.*
572 F.3d 440 (7th Cir. 2009)…………………………..………………………...5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)……………………………….……………………….....………5

*Atanus v. S&C Elec. Co.*,
454 F. Supp. 2d 753 (N.D. Ill. 2006)……………………………………………………...13

*Baer v. First Options of Chicago, Inc.*,
72 F.3d 1294 (7th Cir.1995)…………………………...………………………………..7

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013). ……………………………………………………………11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)……………..………………………………………………..5,12

*Berard v. General Motors Corp.*,
493 F. Supp. 1035 (D.Mass.1980)………………………..……………………………..6

*Bd. of Cnty. Comm'rs v. Brown*,
520 U.S. 397 (1997)………………………………….........................................................10

*Cochran v Marlton Auto Credit*,
933 F. Supp.2d 687 (E.D. Pa. 2013)……………………………………………………..7

*Cooney v. Rossiter*,
583 F.3d 967 (7th Cir. 2009).……………………………………………………………..12

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
770 F.3d 586 (7th Cir. 2014)……………...……………………………………………..5

*DiLeo v Ernst & Young*,
901 F.2d 624 (7th Cir. 1990)…………………………………………………………...12

*District of Columbia Court of Appeals v. Feldman*,
460 U.S. 462 (1983).……………………………………..……………………………..9

*Falk v. Perez*,
973 F.Supp.2d 850 (N.D. Ill. 2013)……………………………………..…………………..14

*First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*,
988 F.3d 978 (7th Cir. 2021).…………………………………………………………………..10

*Fries v Helsper*,
146 F.3d 452 (7th Cir. 1998)…………………………………………………………………...11

*Garry v. Geils*,
82 F.3d 1362 (7th Cir. 1996).……………………………..……………………………………..9

*Greenberger v. GEICO General Ins. Co.*,
631 F.3d 392 (7th Cir. 2011)……………………………….…………………………………..13

*Iddir v. INS*,
301 F.3d 492 (7th Cir. 2002)………………..…………….……………………………………..5

*Kontos v. U.S. Dep't Labor*,
826 F.2d 573 (7th Cir. 1987)…………………………...………………………………………..5

*Loubser v. Thacker*,
440 F.3d 439 (7th Cir. 2006)…………………………………………………………………...11

*Maple Lanes, Inc. v. Messer*,
186 F.3d 823 (7th Cir. 1999).…………………………….……………………………………..9,10

*Marquette Nat'l Bank of Minneapolis v. First Nat'l Bank of Omaha*,
422 F. Supp. 1346 (D. Minn. 1976)……………………………………………………………..6

*Monell v. Department of Social Services of City of New York*,
436 U.S. 658 (1978).…………………………………………..……………………………..10,11

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
549 F.2d 884 (3d Cir. 1977)……………………………………………………………………..5

*Nadzhafaliyev v. Hardy*,
403 F.Supp.3d 663 (N.D. Ill. 2019)……………………...……………………………………...8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011)…………………………….……………………………………..14

*Pratt v. Tarr*,
464 F.3d 730 (7th Cir. 2006)…………………………….……………………………………..11

*Rooker v. Fidelity Trust Co.*,
263 U.S. 413 (1923)……………………………………..…………………………………………..9

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010)…………………………….……………………………………..13

*SKS & Assocs., Inc. v. Dart*,
619 F.3d 674 (7th Cir. 2010)…………………………...………………………………………..8

*Spiegel v. McClintic*,
916 F.3d 611 (7th Cir. 2019)…………………………..………………………………………..11

*Stroman Realty, Inc. v. Martinez*,
505 F.3d 658 (7th Cir. 2007)……………………….....…………………………………………..9

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008)…………………………..……………………………………….6

*Turner v. First of Omaha Serv. Corp*.,
401 F. Supp. 439 (S.D. Iowa 1975)……………………..……………………………………….6

*U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*,
470 F. Supp.2d 823 (N.D. Ill. 2007)….………………….……………………………………..12

*Younger v. Harris*,
401 U.S. 37 (1971)…………………………………………..…………………………………..8,9

***Illinois Cases***

*Adcock v. Brakegate, Ltd.*,
164 Ill.2d 54 (1994)……………………………………………………………………………….8

*Buckner v. Atlantic Plant Maintenance, Inc.*,
182 Ill.2d 12 (1998)……………………………...……………………………………………..8,11

*Heying v. Simonaitis*,
126 Ill.App.3d 157 (1st Dist. 1984) ……………………………………………………………11

*Indeck North American Power Fund, L.P. v. Norweb PLC*,
316 Ill.App.3d 416 (1st Dist. 2000)……………………………………………………………..8

*Scott v. Aldi, Inc.*,
301 Ill.App.3d 459 (1st Dist. 1998)……………………..……………………………………..13

***Federal Statutes***

28 USC § 1331……………………..……………………………………………………..………..1,7

28 USC § 1343…………………..…………………..……………………………………..1,7

28 USC § 1367…………………..…………………..……………………………………..1,7

29 U.S.C. § 412………………………………………..……………………………………..6

42 USC § 1983………………………………..……………………………………….*passim*

***Federal Rules of Civil Procedure***

Federal Rule of Civil Procedure 9……………………………………………………………..12,14

Federal Rule of Civil Procedure 12(b)(1)………………………………………………..5,8,9

Federal Rule of Civil Procedure 12(b)(6)…………………………………………..................…5

***State Statutes***

815 ILCS 505/1, *et seq*., ………………………………...........................................................…12

815 ILCS 505/1(f).…………………………………………………………...................…13,14

815 ILCS 505/2.……………………………….............................................................…13

## I. INTRODUCTION

Plaintiff's sprawling 393 paragraph and prolix First Amended Complaint weaves a tale about its late night liquor license, violence, and how Plaintiff asserts it has been wronged by the City of Chicago. But the First Amended Complaint provides zero allegations concerning Defendant Baum Realty Management's ("Baum") involvement in such action; whether such claim is couched in terms of a conspiracy or a fraud. At least as to Baum, the First Amended Complaint is woefully inadequate and must be dismissed.

Plaintiff's First Amended Complaint also suffers from several insurmountable procedural and jurisdictional issues that requires dismissal. First and foremost, there is no subject matter jurisdiction as to Baum. Plaintiff's Complaint only alleges state law claims against Baum. Thus there is no jurisdiction under 28 USC § 1331 or § 1343 as alleged. The only possible way to obtain federal jurisdiction against Baum is under 28 USC § 1367 (which was not even alleged), but the First Amended Complaint comes nowhere close to reaching that statutory threshold.

But even ignoring that, Plaintiff First Amended Complaint (as correctly explained by the City) is also an improper review of an ongoing state administrative proceeding to revoke Plaintiff's late night liquor license that the federal courts have no jurisdiction over.

Finally, as to Count V, VI, and VIII directed against Baum, there is nothing in the First Amended Complaint to support such conspiracy claims or fraud claims even under the low bar established by notice pleading. The First Amended Complaint as to Baum must be dismissed.

## II. SUMMARY OF FIRST AMENDED COMPLAINT

While the First Amended Complaint meanders through numerous irrelevant facts, the gravamen of the First Amended Complaint appears to be a three pronged argument: (i) the City of Chicago issued a Summary Closure Order; (ii) the City of Chicago brought citations for building violations to continue to allegedly delay the closure; and (iii) the City then revoked the liquor

license. Plaintiff further alleged that it appealed the revocation the license through the administrative process and apparently lost; and that process is, according to Plaintiff's First Amended Complaint, still ongoing. Plaintiff's First Amended Complaint is in eight counts:

| | Claim | Defendant(s) |
|---|---|---|
| Count I | § 1983 Equal Protection (Class of One) | City of Chicago |
| Count II | § 1983 First Amendment (Retaliation) | City of Chicago |
| Count III | § 1983 Due Process | City of Chicago |
| Count IV | State Abuse of Process | City of Chicago |
| Count V | State Claim Conspiracy (§ 1983) | All Defendants |
| Count VI | State Claim Fraud | All Defendants |
| Count VII | State Claim Consumer Fraud | FIB and BRG |
| Count VIII | State Claim Conspiracy (Consumer Fraud) | All Defendants |

But more to the point, the allegations that even mention Baum are referenced below and demonstrate Plaintiff provides ***nothing*** to show any involvement ***by Baum vis-à-vis the City of Chicago*** concerning the City of Chicago's alleged decision. There are also no allegations of any agreement between Baum and the City of Chicago, or any ***direct statement*** of Baum to Plaintiff that could support a fraud claim or state consumer conspiracy claim.

> 12. Defendant ***Baum Realty Group, LLC ("Baum Realty")*** is an Illinois limited liability company with its principal place of business located at 1030 W. Chicago Ave., Suite 200, Chicago, IL 60642.
>
> 108. After Breidinger and Loft's Zoom call with Mr. Lin, Breidinger, Berger, David Baum ("Baum") (CEO of Baum Realty), Mike Demetriou ("Demetriou") (president of Baum) and Doug Renner ("Renner") (managing director of Baum) ***began coordinating on the best way to handle the February 6, 2022 shooting*** giving rise to the Summary Closure.
>
> 109. While discussing the February 6, 2022 shooting at the Property, Breidinger stated, in part, in an ***email to Berger, Baum***, Demetriou and Renner that:

[Mr. Lin] also voiced frustration with the police. Before the first shooting, they had called and requested police come about an hour before the shooting happened, and they did not arrive until after. [Mr. Lin] said they literally were begging them to come as things escalated outside. [Mr. Lin] has done his best not to voice this frustration publicly, because he fears retaliation from [CPD] and knows he won't get any help in the future. [Mr. Lin] has also struggled getting any type of response from the Alderman regarding his concerns for the neighborhood and repeated requests for more police presence.

While I have everyone here, I'd like thoughts and guidance on the people living at the Flat Iron. It is a legal and insurance nightmare that people live there - the building is not up to residential code and not zoned for residential use. We will see an increase in vacancies, should we work to eliminate this problem. Should we try to fix this, or leave it to the buyer? Does this issue effect the value of the property?

126. Between March 2, 2022 and March 8, 2022, ***Breidinger relayed all of Beaudet's statements*** from their March 2, 2022 teleconference to Berger, Olear, Kwan, Baum and its agents, and Forkin.

143. On March 2, 2022 at 10:42 pm, Berger responded to Breidinger and Olear stating "[l]et's also ask David Baum what he thinks -- Are you both comfortable with me forwarding this?" (March 2, 2022 email from Berger to Breidinger and Olear attached as Exhibit 18).

144. On March 3, 2022, Breidinger stated to Berger and Olear that:

> When I spoke to Doug [Renner] about this space after the shooting, before this shakedown from the city, he already thought it was a PR nightmare. Let's see what David [Baum] says- I'm pretty confident he will agree.
>
> We will want to get this initiated as soon as possible, if it's the route we choose to go. I'll have to get Cary [Schiff] involved, and that can take some time....

147. On March 3, 2022, Berger forwarded David Baum and Demetriou Breidinger's email (line 140) and Olear's response (line 141).

148. On March 3, 2022, ***Berger emailed Baum*** and Demetriou the agreement between Berger, Breidinger, and Olear to terminate Plaintiff's tenancy in order to align with what the City wants, i.e., modification of Plaintiff's Late-Hour License or Plaintiff's inability to operate from the Property.

149. As of March 3, 2022, Berger, Breidinger, Olear, and ***Baum Realty*** had ***knowledge of the agreement posed by Beaudet to Breidinger*** on March 2, 2022,

and knew they could show alignment with the City by terminating Plaintiff's Lease or forbearing on repairing the Arts Building Violations.

150. On March 4, 2022, Demetriou stated to Berger and David ***Baum*** in response to Berger forwarding Breidinger's email (line 140) and Olear's response (line 141) that "[w]e've chatted through these issues – it would be best to speak orally. Can you chat later this afternoon, or on Monday or Tuesday?" (*See* Exhibit 17).

151. On Monday March 7, 2022 at 2:00 pm, Berger, Breidinger, Demetriou and David Baum participated in a conference call where they discussed Beaudet's March 2, 2022 agreement

158. Breidinger only authorized Plaintiff to pull permits for the Property once Berger, Breidinger, Olear, BRG,FIB, and ***Baum Realty*** agreed with the City to terminate Plaintiff's Lease or forbear from repairing the Arts Building Violations so long as the Arts Building Violations did not affect any *other* tenants of the Arts Building, and with the agreement the City would not allow Plaintiff to re-open until "all the violations are fixed, for the entire building."

159. Berger, Breidinger, Olear, BRG and FIB never authorized Plaintiff to pull any permits for the Arts Building, as those were violations Berger, Breidinger, Olear BRG, FIB, ***Baum Realty***, Forkin, and Savas had agreed not to fix (explained in detail below). Any repairs made by Plaintiff to the Property would be useless for the purposes of re-opening until the owner of the Arts Building fixed the "entire building."

180. Prior to May 10, 2022, FIB was contemplating selling the Arts Building and was using ***Baum Realty*** as its sales agent.

181. Between May 10, 2022 and July 2022, FIB, BRG, ***Baum Realty***, Berger, Breidinger, an (at least) Forkin had discussions with Savas regarding the sale of the Arts Building, Beaudet's agreement discussed on the March 2, 2022 teleconference with Breidinger, and FIB, BRG, and the other Defendants' agreement with the City to terminate Plaintiff's Lease or forbear from repairing the Arts Building Violations until Plaintiff's Late-Hour License was modified or revoked.

199. Beginning on at least June 17, 2022, Forkin had full knowledge of the conspiracy between Berger, Breidinger, Olear, ***Baum,*** and the City.

200. On June 17, 2022 Patrick Forkin had a meeting with Savas at the Arts Building. At that meeting, Forkin told Savas, which may not have been for the first time, that FIB, BRG, Berger, Breidinger, Olear, Kwan, ***Baum Realty***, and Forkin had agreed not to terminate the Lease or forbear from completing all of the Arts Building Violations, and that FIB (and the other defendants) were working to contrive a reason to terminate Plaintiff's Lease in order to curry favor with the City so that the Arts Building Violations would not be enforced against the *other* tenants

> of the Arts Building. At that meeting, Savas told Forkin to direct FIB (and the other defendants) not to finish the repairs of the Arts Building Violations.
>
> 220. As of October 17, 2022, and per their agreement to forbear from repairing all of the Arts Building Violations, Berger, Breidinger, Olear, Kwan, FIB, BRG, ***Baum Realty***, Forkin and Savas caused substantial Arts Building Violations to remain outstanding, which all Defendants knew would need to be completed for Plaintiff to re-open.

(Attached as Exhibit 1 is the Amended Complaint without exhibits)(emphasis added).

## III. THE MOTION TO DISMISS STANDARD UNDER 12(b)(1) AND 12 (b)(6)

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is meant to test the legal sufficiency of a complaint, not to decide the merits of the case. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). Generally, in deciding these motions, courts accept as true all well-pleaded factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Burwell*, 770 F.3d at 588 (quoting *Iddir v. INS*, 301 F.3d 492, 496 (7th Cir. 2002)). Nevertheless, courts are not bound to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. See *Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576 (7th Cir. 1987). A jurisdictional attack can be facial (based on the pleadings) or factual (beyond the pleadings) *Apex Digital, Inc. v. Sears, Roebuck & Co*. 572 F.3d 440, 444 (7th Cir. 2009)(*quoting Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977).

Similarly, to survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550

U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. See *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Mere legal conclusions, however, “are not entitled to the assumption of truth.” *Iqbal*, 556 U.S. at 679.

## IV. ARGUMENT

### A. There is No Jurisdiction As to Baum—Supplemental or Otherwise

Plaintiff has filed claims against Baum under Count V, VI, and VIII. Count VIII is a state law conspiracy claim under DPTA, Count VI is a state law claim for fraud. Count V is a state law conspiracy claim to violate 42 USC § 1983. Not surprisingly, Plaintiff does not claim Baum somehow turned into a state actor “under color of law” to be directly liable under 42 USC § 1983.

And it is clear that a state conspiracy claim to violate a federal statue is still a state law conspiracy claim. See *Abrams v. Carrier Corp.*, 434 F.2d 1234, 1253–54 (2d Cir.1970)(remanding conspiracy claim because there exists no federal statute which confers independent jurisdiction upon the federal courts for claims of civil conspiracy in the labor relations field, and conspiracy to violate an individual's rights under the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 412, is not sufficient to vest federal court with jurisdiction); *Berard v. General Motors Corp.*, 493 F. Supp. 1035, 1042 (D. Mass. 1980) (adopting the reasoning in *Abrams*); *Marquette Nat'l Bank of Minneapolis v. First Nat'l Bank of Omaha*, 422 F. Supp. 1346, 1351 (D.Minn. 1976) (“A cause of action alleging a civil conspiracy is a state law claim whether the statute to be violated is state or federal.”); *Turner v. First of Omaha Serv. Corp.*, 401 F. Supp. 439, 443 (S.D. Iowa 1975) (“The basic cause of action ... remains a matter of state substantive law, however, regardless of the fact that the tort may be called a conspiracy to violate a federal law.”). Thus only state law claims are asserted by Plaintiff in the First Amended Complaint, so Plaintiff does not properly

allege jurisdiction under 28 USC § 1331 and § 1343 as to Baum. Based on the face of the First Amended Complaint, there is no jurisdiction, so the claims must be dismissed.

Although not alleged, jurisdiction under 28 U.S.C. § 1367 also cannot exist. That statute states:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The Seventh Circuit has held that two claims are part of the same case or controversy under 1367 if they " 'derive from a common nucleus of operative facts. A loose factual connection between the claims is generally sufficient.' " *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir.1995).

In this case, Counts I, II, and III, establish subject matter jurisdiction for the ***case itself*** by the federal claims under 42 USC § 1983 as against the City of Chicago. The gravamen of Counts I, II and III all stem from the ***City's alleged action*** in cancelling the Plaintiff's late night liquor license through this three pronged argument referenced above. Thus the facts involved in those claims will be exactly what the City did, vis-à-vis concerning the liquor license.

Conversely, the claims against Baum will be ***what Baum agreed to do with City of Chicago*** (conspiracy claims) and what communications Baum ***made directly to Plaintiff*** that were fraudulent under Count VI and what the Plaintiff relied upon concerning Baum's alleged misstatements. There is simply no connection, let alone a required loose factual connection, between the gravamen of the claim against the City of Chicago and the claims against Baum. See *Cochran v Marlton Auto Credit*, 933 F. Supp.2d 687, 699 (E.D. Pa. 2013)(federal claim against

one defendant and separate state law claim against other defendant would not rely on the same evidence.). There is simply no subject matter jurisdiction. Dismissal as to Baum is required.

### B. If There Is No § 1983 Liability—There Can Be No Liability under Conspiracy To Violate § 1983 Under Count V

"In order to state a claim for civil conspiracy, a plaintiff must plead a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 23–24 (1998) (citing *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62 (1994)). In addition a conspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails. *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill.App.3d 416, 432 (1st Dist. 2000) (citing *Adcock*, 164 Ill.2d 54). In, this case the City of Chicago has correctly raises several insurmountable burdens for underlying § 1983 liability that would defeat the state § 1983 conspiracy claim.

#### 1. The *Younger* Doctrine Requires Dismissal Under 12(b)(1)

As explained in detail by the City of Chicago, the *Younger* abstention doctrine requires dismissal of this case ***in its entirety***. "Because Younger abstention concerns whether courts should exercise jurisdiction that they have over the parties' claims, motions to dismiss on *Younger* grounds are best construed as motions pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of subject matter jurisdiction." *Nadzhafaliyev v. Hardy*, 403 F.Supp.3d 663, 668 (N.D. Ill. 2019). The *Younger* abstention doctrine, which is rooted in traditional principles of equity, comity, and federalism, requires federal courts to refrain from exercising their jurisdiction when relief may interfere with certain state proceedings. *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010) (citing *Younger v. Harris*, 401 U.S. 37, 53–54 (1971)).

Situations in which *Younger* abstention is appropriate include those in which there is an ongoing state proceeding that is judicial in nature, involves important state interests, provides the plaintiff an adequate opportunity to raise the federal claims, and no exceptional circumstances exist. *Stroman Realty, Inc. v. Martinez,* 505 F.3d 658, 662 (7th Cir. 2007).

In this case, the First Amended Complaint ***on its face*** states that it is challenging the revocation of its license under case 22 LR 001 through a judicial process and that those proceedings are ongoing (First Amended Complaint, pgs. 51-54). As all counts emanate from the alleged improper revocation of that license, the entire case must be dismissed as correctly stated by the City of Chicago. With no § 1983 claim, there can be no conspiracy.

### 2. ***Rooker Feldman*** **Will Further Require Dismissal under 12(b)(1) Even After the Final Revocation Issue In State Court**

In addition, if a final decision is adverse to Plaintiff, it cannot challenge that result in federal court pursuant to the *Rooker-Feldman* doctrine. The *Rooker–Feldman* doctrine prohibits federal courts from exercising subject matter jurisdiction over claims seeking review of state court judgments. See *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983). In assessing the applicability of the *Rooker–Feldman* doctrine, "the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996).

And directly on point, the Seventh Circuit has found that when a state court revokes a liquor license, any appeal must be from that decision, precluding any federal 42 USC § 1983 claims. *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir. 1999). In language directly applicable, the *Maple Lanes* Court stated "A plaintiff may not circumvent the effect of the *Rooker–Feldman* doctrine simply by casting his complaint in the form of a federal civil rights action [citation]. In

essence, Maple Lanes seeks to undo the effect of the revocation of its liquor license by collecting an amount of damages from Messer for the alleged violation of its constitutional rights equal to the monetary value of the license. The *Rooker–Feldman* doctrine does not permit this result." *Id.* The case would need to be dismissed under *Rooker-Feldman* even after the final stated judgment. With no § 1983 liability, there can be no conspiracy.

### 3. The City Of Chicago Has No *Monell* Liability To Support § 1983 Liability

As also correctly raised by the City of Chicago, the underlying Section 1983 claim cannot be maintained directly against the City of Chicago. Case law is clear that a municipality is a "person" under § 1983 and may be held liable ***for its own violations*** of the federal Constitution and laws. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978). But Municipal liability under *Monell* carries an important limitation: the statute does not incorporate the common-law doctrine of respondeat superior, so a municipality cannot be held liable for the constitutional torts of its employees and agents. *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021).

Accordingly, to prevail on a § 1983 claim against a municipality under *Monell*, a plaintiff must challenge conduct that is properly ***attributable to the municipality itself***. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997). Specifically, the plaintiff must prove that the constitutional violation was caused by a governmental "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Courts have interpreted this language to include three types of actions that can support municipal liability under § 1983: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it

constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019).

In this case, as correctly pointed out by the City of Chicago, there is no express policy or custom that was alleged. There is also no final municipal action by a policy maker alleged (i.e. the City Council). There can be no *Monell* liability. With no underlying liability there can be conspiracy.

**4 Even Ignoring the Above, There is No Properly Pleaded Conspiracy**

Illinois law is clear, that "[t]he mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 23 (1998). To allege a conspiracy, "the complaint must set forth with particularity the facts and circumstances constituting the alleged conspiracy." *Heying v. Simonaitis*, 126 Ill.App.3d 157, 163 (1st Dist. 1984) And specifically in order to establish 1983 liability through a conspiracy theory, a plaintiff must demonstrate that a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitution rights and those individuals were willful participants in the joint activity with the State or its agents. *Fries v Helsper*, 146 F.3d 452, 457 (7th Cir. 1998).

A plaintiff must set forth allegations with the specific defendants, the approximate time period of the conspiracy, and the general purpose of the conspiracy. See *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). A plaintiff is not required to plead a "precise causal connection" between the actions of the defendants and the alleged violations, but instead only a "tenable theory or basis of suit." *Pratt v. Tarr*, 464 F.3d 730, 732–33 (7th Cir. 2006). At the same time, the plaintiff must allege that "a particular defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Neither "a bare allegation of conspiracy," nor

"mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her [,] * * * [is] * * * enough to survive a motion to dismiss for failure to state a claim." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

The First Amended Complaint provide not a scintilla of fact to support an "understanding" or "agreement" between Baum and the City of Chicago (or any other defendant). Moreover, the First Amended Complaint is completely silent on who at Baum and who at the City made this alleged agreement. In the words of *Bell Atlantic* "The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp*., 550 U.S. at 555. The First Amended Complaint stops at the speculative level and provide nothing further. The dismissal of the § 1983 Conspiracy claim is required.

**C. Fraud Is Not Properly Pleaded Under Count VI**

Count VI asserted a claim for common law fraud. Federal Civil Procedure Rule 9(b) ("Rule 9(b)") provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires specifics such as the name of the individual who made the statement, the specific date the statement was made, to whom the statement was made, and the date of the statement. *U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 470 F.Supp.2d 823, 831 (N.D. Ill. 2007)(citing *DiLeo v Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Plaintiff provides nothing coming even close to the "who" "what" "where" or "when" on this alleged fraud concerning statements Baum would have made directly to Plaintiff. The fraud claim must be dismissed.

**D. Conspiracy to Violate The ICFA Under Count VIII Must Be Dismissed**

Count VIII was a conspiracy to allegedly violate the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*., The ICFA "provides a remedy for 'unfair methods

of competition and unfair or deceptive acts or practices' in specific commercial transactions." *Greenberger v. GEICO General Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011) (quoting 815 Ill. Comp. Stat. 505/2.) The ICFA declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 Ill. Comp. Stat. 505/2. "The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) "The terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. Ann. 505/1(f).

**1 There Can Be No Conspiracy Claim Under Illinois Law To Violate A Statute**

As noted, a civil conspiracy claim must be founded upon a "tortious act." *Scott v. Aldi, Inc.*, 301 Ill.App.3d 459, 462 (1st Dist. 1998) ("The gist of a civil conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement."). Case law is clear that Illinois law would not recognize such statutory violations as "torts" for purposes of a civil conspiracy claim. See *Scott*, 234 Ill.Dec. 665, 703 N.E.2d at 529 (holding that the "violation of a statute or ordinance" can be tortious if the statute is "designed to protect human life or property"); *Atanus v. S&C Elec. Co.*, 454 F. Supp. 2d 753, 756 (N.D. Ill. 2006) ("A violation of a federal regulation is not a tort. Accordingly, a violation of the regulation involved in this case is not an unlawful act that could form the basis of [the plaintiff's] conspiracy claims.").

There can be no conspiracy to violate a statute. The claim must fail.

**2. The Underlying ICFA Claim Itself Is Deficient**

Plaintiff alleged that FIB and BRG used unfair and deceptive acts (First Amended Complaint, ¶ 387). Plaintiff further alleged that FIB and BRG used their unfair and/or deceptive acts to gain leniency with the City so that the Arts Building violation would not be enforced against the other tenants (First Amended, Complaint, ¶ 388). The underlying claim is deficient.

Plaintiff provided no facts to support that FIB or BRG made these alleged unfair and/or deceptive act ***directly to Plaintiff***. Moreover, the acts must involve trade or commerce. As noted above, the terms 'trade' and 'commerce' mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 ILCS 505/1(f). Nothing in the First Amended Complaint provides any factual support that either FIB or BRG provide any of these advertising or offering acts to Plaintiff. This was the result in *Falk v. Perez*, 973 F.Supp.2d 850 (N.D. Ill. 2013). In that case the court rejected a claim that an eviction was a trade or commerce because there was no advertising or offering. The underlying claim is deficient so there can be no conspiracy

**3. The Fraud Pleading Standard Is Not Met For the Underlying ICFA Claim**

The Rule 9 pleading standard also applies to the Consumer Fraud and Deceptive Business Practice Act claim. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011). Much like the common law fraud claim, there are no facts that meet the heighten pleading standard for the ICFA conspiracy claim. With no underlying claim,

there can be no conspiracy. In addition, there is nothing alleged for any agreement between any Defendant and Baum concerning these act. Dismissal is required.

## V. CONCLUSION

For all of the above reasons the Motion to Dismiss must be granted.

Respectfully Submitted:

s/Craig G. Penrose

Craig Penrose
Laurie & Brennan, LLP
Two North Riverside Plaza
Suite 1750
Chicago, IL 60606
Phone: 312-445-8780
cpenrose@lauriebrennan.com

## CERTIFICATE OF SERVICE

I, Craig G. Penrose, an attorney, certify that on September 8, 2023, I filed a true and correct copy of the foregoing and served the below-named attorneys through the ECF system:

To: Daniel T. Fahner
Alex Calhoun Kosyla
RKF Global PLLC
555 Skokie Blvd. Suite 450
Northbrook, IL 60062
(202) 680-0971
Email: daniel.fahner@rkfglobal.com
Email: alex.kosyla@rkfglobal.com

*Attorneys for Plaintiff*

Bradley Gordon Wilson
Aaron Talen Dozeman
City of Chicago Law Department, Constitutional and Commercial Litigation Division
2 N. LaSalle Street
Suite 520
Chicago, IL 60602
312-744-7686
Email: bradley.wilson@cityofchicago.org

Email: aaron.dozeman1@cityofchicago.org

*Attorney for Defendant City of Chicago*

Christopher Randall Johnson
Cary G. Schiff & Associates
134 N. Lasalle St., Suite 1740
Chicago, IL 60602
(312) 419-1130
Email: cgschifflaw@gmail.com

*Attorney for Defendant Flat Iron*

Paige Moray Neel
Clausen Miller P.C.
10 S. LaSalle Street, Suite 1600
Chicago, IL 60603, (312) 855-1010
Email: pneel@clausen.com

*Attorney for BRG Defendants*

Marty J. Schwartz
Thomas J.K. Schick
Schain Banks Kenney & Schwartz, Ltd.
70 West Madison, Suite 5400
Chicago Il 60602
(312) 345-5700
mschwartz@schainbanks.com
tschick@schainbanks.com

*Attorney for Defendant Savas ER*

s/Craig G. Penrose
Craig G. Penrose