**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE BLUE NOTE, INC. d/b/a The Point, an Illinois corporation,<br>Plaintiff,<br><br>v.<br><br>THE CITY OF CHICAGO, a Municipal Corporation, FLAT IRON BUILDING, LLC, an Illinois limited liability Company; BERGER REALTY GROUP, LLC, an Illinois limited liability company; ERICA BERGER, an individual; RACHEL BREIDINGER, an individual; ZVONKO OLEAR, an individual; ARTHUR KWAN, an individual; BAUM REALTY GROUP, LLC, an Illinois limited liability company; PATRICK FORKIN, an individual; SAVAS ER, an individual.<br><br>Defendants. | ) | Case: 1:23-cv-00648 |

**BERGER REALTY GROUP, LLC, ERICA BERGER, RACHEL BREIDINGER, ZVONKO OLEAR, AND ARTHUR KWAN'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

NOW COMES Berger Realty Group, LLC, Erica Berger, Rachel Breidinger, Zvonko Olear, and Arthur Kwan (collectively referred to herein as "BRG") by and through their attorneys, PAIGE M. NEEL, MAX G. WESSELS and CLAUSEN MILLER P.C. and for their Reply to Plaintiff's Response to their Motion to Dismiss Plaintiff's Amended Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6), state as follows:

## ARGUMENT

### A. Plaintiff fails to state a claim against BRG for Conspiracy to Violate 42 U.S.C § 1983

Plaintiff's Conspiracy to Violate 42 U.S.C § 1983 is reliant on its underlying claim that the City of Chicago (the "City") deprived Plaintiff of its constitutional rights. As established and

set forth in the City's Motion to Dismiss and Reply (which BRG joins and adopts), the underlying claims upon which Count V rely, fail. Thus, Count V should be dismissed as the underlying claims fail as a matter of law. *See Dyson v. City of Calumet City*, 2019 U.S. Dist. LEXIS 140690, at *23 (N.D. Ill. Aug. 20, 2019), dismissing plaintiff's conspiracy claim as there was no underlying constitutional violation.

Furthermore, Plaintiff's Response and Complaint cannot and do not demonstrate a sufficient nexus between the state and the private actor or that BRG was a "willful participant" in a joint agreement to commit a constitutional tort. Plaintiff's own allegations establish that City's alleged plan to deprive Plaintiff of its Late-Hour License began in "at least January of 2020," and that the decision to close the Point under the Summary Closure Order and the Emergency Closure Order were made prior to any allegations of conspiracy involving BRG. (Dkt. # 24, ¶¶ 58-59, 120).

Plaintiff also ignores and cannot overcome the fact that, per its owns allegations, the February 18, 2022 Emergency Closure Order, which Plaintiff claims was a "ruse to facilitate entry into the Property by representatives from the Department of Buildings (DOB)" so they could find other building code violations and intentionally combined those to keep the Point closed, occurred before the claimed conspiracy began. *Id.* at ¶¶ 120, 125, 239. Likewise, the alleged conspiracy to keep the Plaintiff closed so that other tenants located in the Arts Building were not closed was a decision made before the claimed conspiracy began. *Id.*

"To withstand dismissal of a § 1983 conspiracy claim, a plaintiff must plead each defendant's role in the conspiracy, not only with respect to overt acts but also an agreement to effect the constitutional harm." *Jointer v. Cambric*, NO. 92 C 7313, 1993 U.S. Dist. LEXIS 5881, at *10 (N.D. Ill. Apr. 29, 1993), Further, allegations must be reasonably specific as to

time, location, and scope of conspiracy. *Id*. Here, Plaintiff cannot show the required concerted effort between BRG and the City and cannot show that BRG and the City reached an understanding to close the Point under the Summary or Emergency Closure orders, nor can Plaintiff establish BRG and the City had an agreement to keep the Point closed so that other tenants would not be closed.

In a tenuous attempt to argue that conspiracy has been pleaded, Plaintiff claims that BRG later joined this conspiracy by emailing the Commissioner of the DOB (Beaudet) assuring him that BRG is committed to addressing all issues cited by inspectors and requesting a call to discuss these issues. (Dkt. # 24, Ex. 13). Beaudet simply replied to this e-mail with a copy of the violations and stated that BRG's architect will inform BRG of the required permits and documents. *Id*. at ¶¶ 121-122, Exs. 13-14. These communications contain no factual support of the claimed conspiracy as the same is devoid of any indication, whatsoever, that leniency was requested nor do these communications contain any indication that BRG would agree to keep the Point closed to curry favor with the City. *Id*. In fact, these communications establish the opposite- that BRG is committed to fixing the violation and that Beaudet did not grant any leniency or make any deal. *See Bogie v. Rosenberg*, "[w]hen an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." 705 F.3d 603, 609 (7th Cir. 2013). Furthermore, Plaintiff cannot and does not explain why such a conspiracy would be entered into in the first place as the other tenants were not ordered to be closed.

Considering these emails which erode Plaintiff's theory of a conspiracy, Plaintiff baselessly alleges that despite this communication, a call was held where the conspiracy was entered into. (Dkt. # 24, ¶¶ 125). This allegation is insufficient to state a claim for conspiracy. A

mere suspicion that persons adverse to the plaintiff had joined a conspiracy against plaintiff is not enough to survive a motion to dismiss for failure to state a claim. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009).

Furthermore, Plaintiff's claim that communications demonstrate a conspiracy are defeated by the content of the same exhibits. Plaintiff first claims that Breidinger relayed the conspiracy to other BRG employees and cites Exhibit 21, but the same is devoid of any factual basis for a conspiracy claim. This communication simply contains discussions related to lease terminations options in light of the well documented dangers and safety concerns posed by the Point. (Dkt. # 64, p. 7, Dkt. # 24, Exs. 7, 21, 24, 26, 35 pp. 51-73, 44). Plaintiff's claim that the numerous violent incidents, complained of disturbances, reported incidents and violations at the Point, which support BRG's opinion that the Point's lease should be terminated, are untrue is plainly defeated by its own Complaint exhibits. *Id*. Communications related to lease termination do not support a conspiracy claim but only evidence BRG's concerns related to the safety of tenants, negative media attention, reputational damage and concerns related to legal and insurance issues, which BRG made Plaintiff aware of. (*See* Dkt. # 24, Ex. 26).

BRG's position that it did not want to be involved with the Point's "fight" with the City and that it agreed with the City's finding that it was dangerous and a nuisance to the area do not constitute an agreement to deprive a constitutional right. *Id.*, Ex. 17. Furthermore, negotiations concerning what entity would pay and perform certain repairs does not evidence or establish an agreement to not make repairs so that the Point could not operate. *See Id.*, Ex. 33. The speed of the repairs done or the party responsible for the repairs do not support, evidence or demonstrate that a state official and private individual reached an understanding to deprive the plaintiff of

constitutional rights and those individuals were willful participants in joint activity with the State. *Fries v. Helsper,* 146 F.3d 452, 457 (7th Cir. 1998).

Plaintiff then claims that BRG's Motion to Dismiss which establishes that this theory of conspiracy is disproven by the fact that repairs were made, is "not grounded in fact, nor does it align with Plaintiff's allegations." (Dkt. # 64, p. 9). Plaintiff's bare allegation that the violations were not fixed which caused Plaintiff to remain closed is proven untrue by Plaintiff's own allegation that on March 16, 2023, "… The Department of Buildings Commissioner Closure on THE POINT/ 1565 N Milwaukee AVE. s (sic) now lifted." (Dkt. # 24 ¶ 330, Ex. 43. Plaintiff's attempt to substitute its own judgement for that of the DOB in deciding to lift the closure order is not a factual basis to that a conspiracy existed. Furthermore, Plaintiff's own allegations and exhibits disprove the theory that work was not done to keep the Point closed. *See Id.*, Ex. 31.

Likewise, Plaintiff's claim concerning the maximum duration of a Summary Closure Order is defeated by its own allegations, namely that a business closed by the Summary Closure Ordinance is not allowed to re-open until it provides an approved "plan of action" and that the failure to abide by this plan of action could result in an extension of the summary closure order. (Dkt. # 24, ¶¶ 69-70).

**B. Plaintiff fails to State a Claim for Fraud or for Violation of the ICFA**

Plaintiff's fraud and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claim rely on allegations that BRG misrepresented terms related to rent abatement, later used the aggregate amount of rent as a means to evict Plaintiff and lied to Plaintiff about the status of the repairs to the Arts Building. These theories fail as the Complaint is devoid of any false statements, which must be plead with particularity, made by BRG, known to be false that Plaintiff had a right to rely on, or did rely on, that induced Plaintiff to act, nor does Plaintiff

allege how any relied upon statement caused injury. *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 529, 675 N.E.2d 897, 905 (1996). Furthermore, a breach of a contractual promise, without more, is not actionable under the Consumer Fraud Act. *Avery v. State Farm Mutual Automobile Insurance Co.,* 216 Ill.2d 100, 168 (2005).

Exhibit 2 to the Complaint clearly states that 50% of the rent is abated until May 1, 2021, that unabated rent is deferred until one year after the abatement period (May 1, 2022) and that $30,000 is due on or before May 1, 2021. (*See* Dkt. # 24, Ex. 2, sections 2.3-2.5). Thus, Plaintiff's claims that it was told rent was deferred until the Point opened or that BRG's demands for rent, which were allegedly made with the hopes of eviction, do not meet the pleading standard for fraud or constitute fraud. None of these statements were fraudulent, misrepresented or relied on by Plaintiff as the Point was aware of its rent obligations per the lease amendment it executed. *Id*. *See Rand Road Property v. LD Holdings, LLC*, dismissing plaintiff fraud claim the plain an agreement, attached as an exhibit, established that the claimed false statement was true.

Furthermore, Plaintiff cannot and does not establish that statements concerning rent caused an injury. This is fatal to Plaintiff's claims as Plaintiff alleges it paid the rent and because BRG never terminated its lease. *Id*., ¶ ¶ 217-18, 320-21. *See LoggerHead Tools, LLC v. Sears Holding Corp.*, dismissing plaintiff's fraud claim because plaintiff did not plead reliance or damages. No. 12-CV-09033, 2013 U.S. Dist. LEXIS 62651, at *15 (N.D. Ill. May 1, 2013).

Similarly, Plaintiff's reliance on statements related to construction repairs also fails. Plaintiff's Response and Complaint cannot and do not identify any false statements concerning these repairs. The Complaint and its exhibits establish that Plaintiff was permitted to begin working on the Point's violations, was updated as to the status of the repairs and that the work to correct violations was done and approved. *Id*., ¶¶ 146, 157, 166, 179, 330, Ex. 31. Plaintiff's

inability to plead fraud or a violation of the ICFA is exemplified by the fact that on June 8, 2022, BRG informed Plaintiff that it could not guarantee that the massively invasive PVC replacement would be completed by June 22, 2022. *Id.*, Ex. 26.

Plaintiff also claims that BRG used unfair and/or deceptive acts to keep other tenants open in exchange for the Point staying close. In response to the fact that the DOB inspected the property and decided to only close the Point, prior to any allegations of unfair or deceptive acts committed by BRG, Plaintiff simply claims that other violations "should have been enforced" and other tenants should have been closed. (Dkt. # 64, p. 11). Plaintiff's opinion that other tenants should have been closed is wholly unrelated to any action by BRG and does not constitute a concealed, fraudulent or misrepresented statement made by BRG. It is illogical for Plaintiff to claim that the decision to shut down only the Point supports Plaintiff's theory when BRG was not involved in this decision and the decision was made prior to any allegations of any fraudulent, concealed or misrepresented statements. Furthermore, Plaintiff cannot point to a single factual allegation to demonstrate that, at any time, BRG made a deal with the City so that other violations would not be enforced.

**C. Plaintiff fails to State a Claim for Conspiracy to Violate the ICFA**

Plaintiff's Response does not address the well-founded arguments and facts set forth in BRG's Motion to Dismiss, namely that Plaintiff does not set forth a cause of action under the ICFA and does not plead the elements for a conspiracy. Thus, for the reasons set forth in BRG's Motion to Dismiss and herein, Count VIII should be dismissed.

For the reasons stated above, Berger Realty Group, LLC, Erica Berger, Rachel Breidinger, Zvonko Olear, and Arthur Kwan, respectfully requests that this Honorable Court

grant their Motion to Dismiss and enter an Order dismissing Plaintiff's Amended Complaint, with prejudice and for any other relief that this Court deems just and equitable.

Respectfully submitted,

/s/ Paige M. Neel

PAIGE M. NEEL – 6279324
pneel@clausen.com
MAX G. WESSELS – 6324836
mwessels@clausen.com
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, Illinois 60603-1098
312/855-1010
Attorneys for: Defendants, Berger Realty Group, LLC, Erica Berger, Rachel Breidinger, Zvonko Olear, and Arthur Kwan

**CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING**

The undersigned hereby certifies that a true and correct copy of Defendants' Reply in Support of their Motion and Memorandum to Dismiss Plaintiff's Amended Complaint was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record on October 11, 2023.

*/s/ Pamela A. Walker*